**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

BENJAMIN H.,

                              Plaintiff,

                                                          5:24-cv-1376
            v.                                             (DJS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

OLINSKY LAW GROUP                   HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.         GEOFFREY M. PETERS, ESQ.
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

### <u>MEMORANDUM DECISION AND ORDER</u>[1]

        Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a

decision by the Commissioner of Social Security that Plaintiff was not disabled.  Dkt.

No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Dkt. No. 4 & General Order 18.

1

and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 11, 13, & 14. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1994. Dkt. No. 6, Admin. Tr. ("Tr.") at pp. 233 & 264. He has at least four years of college education. Tr. at p. 237. He has not worked since November 2018. *Id.* He has past work experience as a supermarket clerk. *Id.* Plaintiff alleges disability based on autism, anxiety, stress, and mental processing speed. Tr. at p. 236.

### B. Procedural History

Plaintiff applied for supplemental security income and disability insurance benefits on August 7, 2020. Tr. at pp. 78 & 79. He alleged a disability onset date of August 20, 1996. *Id.* Plaintiff's applications were initially denied on October 2, 2020. Tr. at pp. 114-23. Reconsideration was denied on April 6, 2021, Tr. at pp. 126-51, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 152-53. Plaintiff appeared at a hearing before ALJ Gretchen Greisler on October 18, 2021, at which Plaintiff and a vocational expert testified. Tr. at pp. 33-60. On December 15, 2021, the ALJ issued a written decision (the "2021 Decision") finding Plaintiff was not disabled. Tr. at pp. 13-27. On October 14, 2022, the Appeals Council denied Plaintiff's request for review. Tr. at pp. 1-7.

In 2022, Plaintiff filed suit in the Northern District of New York seeking review of the ALJ's decision.  Tr. at pp. 723-24.  The parties stipulated to remand the matter to the ALJ for further proceedings.  Tr. at p. 731.  On September 16, 2023, Administrative Appeals Judge ("AAJ") James Short issued an Order (the "Remand Order"), which vacated the 2021 Decision and remanded the case to the ALJ for resolution of certain issues discussed in the Remand Order.  Tr. at pp. 740-44.  On June 5, 2024, Plaintiff appeared at a second hearing before the ALJ, at which Plaintiff and a different vocational expert testified.  Tr. at pp. 669-93.  On September 13, 2024, the ALJ issued a written decision (the "2024 Decision") again finding Plaintiff was not disabled.  Tr. at pp. 648-61.  This action followed.

### C. The ALJ's 2024 Decision

In the 2024 Decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2019.  Tr. at p. 650.  Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 20, 1996, the alleged onset date.  *Id.*  Third, the ALJ determined that Plaintiff had the following severe impairments: autism spectrum disorder, anxiety disorder, and depression.  Tr. at p. 651.  Fourth, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  *Id.*  Fifth, the ALJ found:

that the [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the [Plaintiff] can perform tasks at a consistent goal-oriented pace but not at a fast, production rate pace, such as would be experienced in assembly-line type of work; the [Plaintiff] can make simple decisions directly related to his . . . work and tolerate occasional minor changes that are gradually introduced; the [Plaintiff] can tolerate occasional interaction with supervisors and coworkers and incidental contact with the public; and the [Plaintiff] can relate to and interact with others to the extent necessary to carry out simple tasks, but should avoid work requiring more complex interaction or joint efforts with coworkers to achieve work goals.

Tr. at p. 653. Sixth, the ALJ found that Plaintiff has no past relevant work. Tr. at p. 659. Next, the ALJ found that transferability of job skills was not an issue because Plaintiff does not have past relevant work. Tr. at p. 660. The ALJ then determined that, based on Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 660-61. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at p. 661.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied

4

correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably

have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can

be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

Plaintiff raises three claims of error for review in this proceeding. First, Plaintiff argues that "[t]he ALJ failed to comply with the order of the Appeals Council regarding the evaluation of the opinion evidence of Michael Kernan, M.D." ("Dr. Kernan"). Dkt. No. 11, Pl's Mem. of Law at pp. 13-15. Second, Plaintiff asserts that "[t]he ALJ failed to adequately evaluate and sufficiently explain his [sic] analysis of the opinions of State agency medical consultants" L. Hoffman, Ph.D. ("Dr. Hoffman"), and P. Fernandez, Ph.D. ("Dr. Fernandez"), which Plaintiff contends "yield[ed] a decision which violates the regulations and lacks the support of substantial evidence." *Id.* at pp. 16-21. Third, Plaintiff claims that "[t]he ALJ improperly based the denial of benefits, in part, on vocational testimony that assumed Plaintiff's need for a job coach." *Id.* at pp. 21-23. Defendant responds that the ALJ complied with the Appeals Council's Remand Order and that substantial evidence supports both the ALJ's evaluation of the prior administrative medical findings from Drs. Hoffman and Fernandez, as well as the ALJ's Step Five finding. Dkt. No. 13, Def.'s Mem. of Law at pp. 4-18.

## A. Compliance with the Remand Order

Plaintiff argues that the ALJ did not comply with the Appeals Council's Remand Order. Pl's Mem. of Law at pp. 13-15. More specifically, Plaintiff claims that the ALJ's

"decision failed to build a logical bridge between the evidence submitted by Dr. Kernan and the ALJ's findings about Listing 12.10." *Id.* at p. 14. The Court disagrees.

In the Remand Order, the AAJ noted several problems with the ALJ's 2021 Decision. First, the AAJ determined that, in evaluating whether Plaintiff's severe mental impairments met or equaled listing 12.10, the 2021 Decision did not contain any consideration of Dr. Kernan's March 17, 2021 opinion[2] that Plaintiff's "autism spectrum disorder met (or equaled) the criteria of Listing 12.10 (autism spectrum disorder) because Dr. Kernan's treatment history showed the claimant had a 'marked' limitation in the ability to interact with others and a 'marked' limitation in the ability [to] adapt or manage oneself." Tr. at pp. 740-41. Second, the AAJ found that the 2021 Decision "d[id] not indicate the level of persuasiveness afforded to Dr. Kernan's March 17, 2021 opinion." Tr. at p. 741. Third, the AAJ determined that the 2021 Decision "d[id] not explain how the mandatory supportability factor was considered when evaluating Dr. Kernan's opinion" because it "d[id] not articulate any objective medical evidence and supporting explanations presented by Dr. Kernan to support his medical opinion," and "d[id] not contain any discussion why the assessed limitations by Dr. Kernan were not incorporated in the residual functional capacity." *Id.* Fourth, the AAJ found that the 2021 Decision did not adequately explain how Dr. Kernan's opinion was inconsistent

---

[2] The Court notes that Dr. Kernan prepared other opinions—including those dated September 16, 2020, and June 4, 2020—discussed by the ALJ in the 2024 Decision, Tr. at pp. 657-59, that are not specifically challenged by Plaintiff. *See generally* Pl's Mem. of Law. In any event, as to those opinions, the Court also finds no error in the ALJ's analysis that warrants remand.

with other evidence, including Plaintiff's need for educational accommodations at college, daily activities, and objective testing results.  Tr. at pp. 741-43.  Consequently, the AAJ ordered the ALJ on remand to "[f]urther evaluate the medical source opinion(s) and prior administrative medical findings pursuant to the provisions of 20 C.F.R. §§ 404.1520c and 416.920c."  Tr. at p. 744.

The ALJ's 2024 Decision addresses each of the issues raised by the AAJ in the Remand Order.  As to the ALJ's consideration of Dr. Kernan's March 17, 2021 opinion regarding Plaintiff's autism spectrum disorder and the level of persuasiveness afforded to that opinion, the ALJ recognized in the 2024 Decision that Dr. Kernan's "opinion indicate[s] that the [Plaintiff] has marked limitations in interacting with others and adopting or managing oneself, and that he meets listing 12.10," but stated that she found this opinion less persuasive, Tr. at p. 658, and ultimately concluded that "[t]he severity of the [Plaintiff]'s mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.10, and near listings."  Tr. at p. 651.  Contrary to Plaintiff's assertion that the ALJ simply made the same statements as contained in the 2021 Decision "without providing adequate reasons to reject the evidence that Listing level severity was established," Pl's Mem. of Law at p. 14, the ALJ sufficiently explained why she found Dr. Kernan's opinion less persuasive.

The ALJ noted that "[t]he opinion does not contain functional ties and is in the form of a checkbox form" and that "the opinion does not have any explanation to support, other than brief sentences."  Tr. at p. 658.  The ALJ also explained that

9

"treatment notes from the provider do not support the opinion" because, "despite some occasions wherein the [Plaintiff] had a[n] anxious or depressed mood, he was noted to be attentive, alert, [and] oriented, with normal speech and thought content repeatedly during exams" and "was repeatedly noted to not be agitated or slowed during encounters." *Id.* (citing Tr. at pp. 463, 466, 470, 531, 535, 536, & 538). The ALJ also found the opinion "not consistent with the totality of the record," which the ALJ stated "contains other evidence which suggests that the [Plaintiff] does not have such severe limitations, including the prior administrative findings and the opinion of the state agency psychiatric medical consultant, which both indicated the [Plaintiff] was able to perform simple work with limited social interactions." *Id.* (citing Tr. at pp. 67-77, 91-108, & 447-51). Likewise, the ALJ drew attention to the fact that Plaintiff "was able to meet with several different providers and engaged in conversation, and he was able to testify at the hearing." *Id.* As such, the ALJ's analysis in the 2024 Decision sufficiently explained her consideration of the factors of supportability and consistency when evaluating Dr. Kernan's opinion.

The ALJ also adequately explained how Dr. Kernan's opinion was inconsistent with Plaintiff's work history, educational history, daily activities, and psychiatric consultative examinations. The ALJ noted that, in connection with Plaintiff's work history and educational history, Plaintiff "maintain[ed] a schedule and routine, continually attend[ed] classes, successfully complet[ed] assignments, interact[ed] with others, and follow[ed]-through on tasks." Tr. at pp. 658-59. The ALJ recounted

Plaintiff's testimony that he "worked at the grocery store managing carts, taking the bottles from the return machine, and taking out the garbage," and noted that such "tasks . . . require attention, concentration, understanding, and remembering."  Tr. at p. 654.  The ALJ observed that Plaintiff graduated from high school with a Regents Diploma, a grade point average of 92.360, and a rank of 129 out of 676 students, and that Plaintiff made high honor roll and received positive comments from his teachers.  Tr. at pp. 651-52 (citing Tr. at pp. 293 & 298).  The ALJ also drew attention to the fact that Plaintiff was ultimately able to obtain a four-year bachelor's degree from the Rochester Institute of Technology.  Tr. at pp. 652, 654, & 658 (citing Tr. at pp. 447 & 291-389).  While the ALJ acknowledged that Plaintiff "required special educational supports in the school setting," the ALJ found that "these records are remote and the [Plaintiff]'s ability to subsequently engage in mentally demanding activities . . . is more indicative of his abilities."  Tr. at p. 659.

In addition, with regard to Plaintiff's daily activities, the ALJ indicated that Plaintiff is able to: "tend to his own grooming, . . . do chores such as housework and cleaning, . . . cook simple meals, and make simple purchases."  *Id.* (citing Tr. at pp. 250-62 & 447-51).  As for Plaintiff's performance during the psychiatric consultative examination, the ALJ stated that Plaintiff was found to have "appropriate personal hygiene and grooming, appropriate posture, motor behavior, and eye contact, fluent speech, coherent and goal-directed thought processes, and intact attention and memory despite [his] limitations."  *Id.* (citing Tr. at p. 449).  In sum, the ALJ concluded that

Plaintiff's work history, educational history, daily activities, and psychiatric consultative examinations were not consistent with Dr. Kernan's significant finding that Plaintiff had "no useful ability to function." *Id.*

Accordingly, the ALJ properly complied with the Appeals Council's Remand Order.

## B. Opinions of Drs. Hoffman and Fernandez

Plaintiff asserts that the ALJ did not "adequately evaluate and sufficiently explain his [sic] analysis" of the opinions of Drs. Hoffman and Fernandez. Pl.'s Mem. of Law at pp. 16-21. More specifically, Plaintiff argues that the residual functional capacity ("RFC") "adopted in this case omits a key limitation—no more than brief and superficial interactions with supervisors and coworkers—assessed by State agency physicians Hoffman and Fernandez," and Plaintiff claims that "the ALJ does not provide an adequate explanation for why the restriction was rejected." Dkt. No. 14 at p. 3. The Court finds no error on the part of the ALJ.

In evaluating medical opinion evidence, an ALJ must consider all medical opinions and evaluate their persuasiveness based on several factors, the two most important of which are supportability and consistency. *Janet Lynn W. v. Comm'r of Soc. Sec.*, 2025 WL 951446, at *3 (N.D.N.Y. Mar. 31, 2025) (quotations omitted). "[A]n ALJ is required to explain how [he or] she considered the supportability and consistency factors." *Id.* (quotations, internal quotation marks, and alterations omitted). "[S]upportability" means that "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1). "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2).

Here, in determining Plaintiff's RFC, the ALJ concluded that Plaintiff "can tolerate occasional interaction with supervisors and coworkers" and "can relate to and interact with others to the extent necessary to carry out simple tasks, but should avoid work requiring more complex interaction or joint efforts with coworkers to achieve work goals." Tr. at p. 653.

In making this finding, the ALJ found the prior administrative findings of state agency medical consultants Dr. Hoffman at the initial level and Dr. Fernandez at the reconsideration level "partially persuasive." Tr. at p. 655 (citing Tr. at pp. 67-77 & 91-108). As relevant here, the ALJ noted that "[b]oth indicated . . . moderate limitations in interacting with others" and found that Plaintiff "was capable of . . . brief and superficial interaction with coworkers and supervisors." *Id.* (citing Tr. at pp. 71 & 98). The ALJ concluded that the "[t]he overall record does support somewhat greater limitations." Tr. at p. 656. The ALJ explained that, on one hand, Plaintiff is "able to regularly attend

appointments, as well as go to other public areas such as school and work," and has been "able to develop a rapport with providers, and was repeatedly noted to be cooperative." *Id.* (citing Tr. at pp. 405-19 & 447-51).  On the other hand, however, the ALJ noted that Plaintiff "is uncomfortable in large groups," "can experience social anxiety," and "has difficult[y] navigating conversations."  *Id.* (citing Tr. at pp. 250-51, 252-62, 447-51 & 1101-16).

The ALJ found the opinion of Todd Deneen, Psy.D. ("Dr. Deneen"), "partially persuasive" as well.  Tr. at p. 655 (citing Tr. at pp. 447-51).  Dr. Deneen opined that Plaintiff had a "moderate limitation in the ability to interact adequately with supervisors, coworkers, and the public."  *Id.* (citing Tr. at p. 450).  The ALJ explained "[t]he record . . . supports greater limitations for interacting with others" because Plaintiff "is uncomfortable in large groups, experiences panic attacks, does better in individual or smaller groups, and has some difficulty navigating long conversations or reciprocating speech."  *Id.* (citing Tr. at pp. 447-51 & 1101-16).  The ALJ noted, however, that "[d]espite his difficulty, [Plaintiff] was able to engage with different providers, . . . he was noted to have clear, fluent speech, and appropriate eye contact and behavior during the consultative examination," and "[o]n other occasions, his mood and affect, and speech were normal, as well."  *Id.* (citing Tr. at pp. 429-34 & 447-51).

The ALJ also noted that Plaintiff's educational records led the ALJ to determine that Plaintiff "is able to perform simple work with limited social interaction," as contemplated in the RFC.  Tr. at p. 655.  More specifically, the ALJ drew attention to

14

the fact that Plaintiff was able to graduate from high school with a Regents Diploma and obtain a four-year bachelor's degree from the Rochester Institute of Technology.  Tr. at p. 654 (citing Tr. at pp. 291-389).  The ALJ also discussed a letter of recommendation that Plaintiff received from his high school teacher, wherein the teacher recounted how Plaintiff "bec[a]me more confident and independent," "blossomed socially," "learned how to comfortably work in a group," "was a leader," and "learned how to relate to his peers, not just adults." *Id.* (citing Tr. at p. 369).

In *Jammy N. v. Comm'r of Soc. Sec.*, like here, the plaintiff argued that the case should be remanded because the findings of two doctors limited the plaintiff to "brief and superficial contact," which the plaintiff argued was "inconsistent with the RFC limiting [p]laintiff to 'occasional interaction.'" 2025 WL 786386, at *3 (W.D.N.Y. Mar. 12, 2025) (quotation omitted).  The court noted that many courts had found that "where, as here, an ALJ properly gave considerable weight to a medical opinion stating a [p]laintiff's ability to handle brief and superficial contact, an RFC containing a limitation to 'occasional interaction' is supported by substantial evidence." *Id.* (citing cases).  Consequently, the court concluded that "the RFC limiting Plaintiff to occasional interaction with supervisors [and] coworkers . . . [wa]s supported by substantial evidence and remand [wa]s not warranted on th[at] ground." *Id.*  The Court finds no reason to hold otherwise here.

Additionally, courts have also held that an ALJ's RFC determination limiting a plaintiff to unskilled work, such as simple tasks, sufficiently addresses a plaintiff's need

15

for brief and superficial social interaction. *Michael G. v. Comm'r of Soc. Sec.*, 2021 WL 2457637, at *9 (N.D.N.Y. June 16, 2021) (citing cases). Thus, here, while Drs. Hoffman and Fernandez may have opined that Plaintiff is limited to no more than brief and superficial interactions with supervisors and coworkers, Tr. at p. 655, the ALJ has, in any event, accounted for this limitation by concluding that Plaintiff has the RFC to "relate to and interact with others to the extent necessary to carry out simple tasks, but should avoid work requiring more complex interaction or joint efforts with coworkers to achieve work goals." Tr. at p. 653.

As such, the ALJ properly explained the factors of supportability and consistency in considering the opinions of Drs. Hoffman and Fernandez, and the RFC restrictions set by the ALJ regarding Plaintiff's ability to interact with supervisors and coworkers are supported by substantial evidence.

### C. Job Coach

Finally, Plaintiff argues that the ALJ erred by relying on the vocational expert's testimony to "support[] a denial of benefits" while not "includ[ing] the need for a job coach in the RFC." Pl.'s Mem. of Law at pp. 21-23. In support of this argument, Plaintiff draws attention to the fact that the vocational expert testified that, should an individual need a supervisor to provide a brief, five-to-ten-minute reminder of his or her job tasks each day, then the vocational expert "would typically offer that person a job coach if requested." *Id.* at p. 22; Tr. at p. 687. Plaintiff further claims that the ALJ's "implicit reliance on the availability of [an] employer" to provide the accommodation

of a job coach was improper.  Pl.'s Mem. of Law at p. 22.  This argument is without merit.

"An ALJ may disregard a vocational expert's response to a hypothetical based on additional limitations that the ALJ does not find are supported by substantial evidence in the record."  *Prince v. Berryhill*, 304 F. Supp. 3d 281, 293 (D. Conn. 2018) (citing *Suarez v. Colvin*, 102 F. Supp. 3d 552, 582 (S.D.N.Y. 2015)).  In *Prince v. Berryhill*, the ALJ posed several hypotheticals to the vocational expert, one of which "was accurately based on the RFC the ALJ ultimately determined," while "the other hypotheticals presented [plaintiff]'s RFC with variations that included additional limitations."  *Id.*  The court held "that the ALJ did not err when he disregarded the vocational expert's testimony" in response to "several of the hypotheticals that contained additional limitations beyond [plaintiff]'s RFC."  *Id.*

Here, the ALJ expressly told the vocational expert that she was going to provide the vocational expert with "hypotheticals."  Tr. at p. 686.  Thereafter, the relevant portion of the hearing transcript referenced by the Plaintiff states as follows:

> Q  Oh okay.  If I were to amend that to provide, in addition to the other restrictions, that the individual could perform simple repetitive tasks and could not multitask, would any of those jobs be available?
> A  Yes, all of them would be.
> Q  What if the individual would need redirection or reinstruction on a daily basis by a supervisor, and by that I mean, you know, would have - - would need a reminder, not a full-scale retraining, but you know, 5 to 10 minutes to be reminded of tasks?
> A  Well, we would typically offer that person a job coach if requested.
> Q  Okay.

17

> A  The job coach would make him competitively employable, but it would provide an extra level of support and supervision.

Tr. at p. 687.  A review of the hearing transcript thereby makes clear that the ALJ merely posed a hypothetical question to the vocational expert.  Tr. at p. 686-87.  The transcript does not contain a response by the ALJ finding that Plaintiff requires a job coach.  *See generally id.*  Likewise, the RFC does not state that Plaintiff requires a job coach.  *See* Tr. at p. 653.  The reason for this is explained in the 2024 Decision, wherein the ALJ stated that, while "[a]lternate hypotheticals were posed to the vocational expert," the record did not support greater limitations than those listed in the RFC.  Tr. at p. 661. Further, in the 2024 Decision, the ALJ explained that she only credited Plaintiff with having, at most, a mild limitation in understanding, remembering, and applying information, and that finding is supported by substantial evidence.  Tr. at pp. 651 & 655-56.

At Step Three, the ALJ explained that "the record supports a mild limitation in this area of mental functioning" because:

> [Plaintiff's] thought processes were generally within normal limits. During the psychiatric consultative examination, his recent and remote memory skills were intact, he could recall 3 out of 3 objects immediately, and 2 out 3 after a delay, [and] he could recite 5 digits forward and 3 digits backward. . . . [Plaintiff] reports needing reminders, but he can generally follow written and spoken instructions if he has extended time to process information.

Tr. at p. 651 (citing Tr. at pp. 432, 448-49, & 252-62).

In determining Plaintiff's RFC, the ALJ found the opinion of psychiatric consultative examiner Dr. Deneen partially persuasive.  Tr. at p. 655 (citing Tr. at pp. 447-51).   The ALJ found that, with regard to Dr. Deneen's finding that Plaintiff "had no limitation understanding, remembering and applying simple or complex directions and instructions," "[t]he record supports greater limitation" because Plaintiff "has difficulty remembering complex directions, and requires prompts or reminders to complete tasks." *Id.* (citing Tr. at pp. 250-62, 291-328, & 447-51).  However, the ALJ concluded that Plaintiff's "limitation in this regard is no more than mild, as he is able to follow simple instructions, and he was able to complete, with support, complex tasks such as graduate from high school and college." *Id.* (citing Tr. at pp. 291-328 & 447-51).  Similarly, in evaluating the opinion of Dr. Kerman, the ALJ took issue with the fact that "Dr. Kerman did not indicate [Plaintiff] had any limitation understanding, carrying out, or remembering instructions" because "it conflicts with the overall record which suggests that [Plaintiff] does have limitation in this area, albeit mild," "including the prior administrative findings" which "indicated [Plaintiff] had a mild limitation." Tr. at p. 657 (citing Tr. at pp. 61-66, 91-108, & 483).

The ALJ also found partially persuasive the opinions of the state agency medical consultants Drs. Hoffman and Fernandez, which "[b]oth indicated that [Plaintiff] had mild limitations in understanding, remembering, and applying information."  Tr. at p. 655 (citing Tr. at pp. 71 & 98).  The ALJ explained that "[t]hese findings are somewhat consistent with the overall record, as other evidence suggests [Plaintiff] has a mild

limitation in understanding, remembering, and applying information, including education records which indicate that [Plaintiff] was provided accommodations such as repeating instructions," among other things, but was nevertheless "able to graduate high school with a regents diploma, attend college, and obtain a four year Bachelor's degree from RIT." Tr. at pp. 655-56 (citing Tr. at pp. 291-328 & 447).

On the other hand, the ALJ found the opinion of Roshan Ghimire, M.D. ("Dr. Ghimire"), "generally not persuasive." Tr. at p. 656 (citing Tr. at pp. 896-901). Dr. Ghimire's opinion "provides for significant mental limitations," including, but not limited to, "remembering work-like procedures" and "understanding and remembering simple instructions." *Id.* (citing Tr. at p. 898). In contrast, the ALJ noted that Plaintiff testified "that he can follow-through on simple tasks" and that he "reported in the function report that he is able to follow written instructions, as long as there are not too many steps involved, and that he can follow written instructions 'generally ok' if he has extended time to process the information." Tr. at p. 657 (citing Tr. at pp. 252-62).

Accordingly, the ALJ did not err by not including a job coach in the RFC.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

20

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED** and the Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated:  February 23, 2026
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge